# EXHIBIT "A"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN HARRIS, *individually and on behalf of all others similarly situated*<br><br>Plaintiff,<br><br>v.<br><br>SEVEN STARS FARM, INC.<br><br>Defendant. | : | CIVIL ACTION NO.: 26-02707-MRP |

## FIRST AMENDED COLLECTIVE ACTION COMPLAINT

Plaintiff John Harris ("Plaintiff") hereby brings this action against Defendant Seven Stars Farm, Inc. ("Defendant"), and alleges, upon personal belief as to his own acts, and upon information and belief as to the acts of others, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this complaint contending that Defendant unlawfully failed to pay him and other similarly-situated hourly workers employed in Defendant's milk processing, bottling, and packaging operations ("Class Plaintiffs") overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

2. Plaintiff is an employee of Defendant who was employed in the position of Milk Processor. Plaintiff and Class Plaintiffs regularly work more than forty (40) hours per week, but receive only their regular hourly rate (i.e. straight-time compensation) for their overtime hours worked.

3. Accordingly, Plaintiff contends that he and Class Plaintiffs are owed unpaid overtime compensation which has been denied them as a result of Defendant's unlawful pay practices.

4. Plaintiff brings this action as a representative action under the FLSA for monetary damages and penalties, to seek redress for Defendant's willful, unlawful, and improper conduct.

5. Plaintiff further contends Defendant has violated the FLSA by retaliating against him with respect to the terms and conditions of his employment for engaging in legally-protected activity, including the filing of this lawsuit on April 24, 2026 (the "Initial Complaint").

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which provides, in relevant part, that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction." See 29 U.S.C. § 216(b).

7. This Court also has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

8. General personal jurisdiction over Defendant exists in the Commonwealth of Pennsylvania because it is both incorporated and maintains its principal place of business in Pennsylvania.

9. The venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as the parties reside in this judicial district, doing business therein, and the unlawful practices about which Plaintiff is complaining were committed in the Commonwealth of Pennsylvania and in this judicial district.

## PARTIES

10. Plaintiff John Harris currently resides at 437 Church St, Royersford, PA 19468.

11. Defendant Seven Stars Farm, Inc., is a domestic business corporation organized and existing under the laws of the Commonwealth of Pennsylvania with an office address

registered with the Pennsylvania Secretary of State of 419 W Seven Stars Rd., Box 560, Kimberton, PA 19442.

12. Defendant is the employer of Plaintiff and Class Plaintiffs and is covered by the FLSA.

13. Upon information and belief, Defendant is a covered employer under the FLSA in that, during the course of Plaintiff's employment and the past three years, it had an annual dollar volume of sales or business done of at least $500,000, and has multiple employees (including, but not limited to Plaintiff and Class Plaintiffs) who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce.

14. Plaintiff and Class Plaintiffs are employees who were engaged in commerce and employed by Defendant during all times relevant hereto and, as such, were employees entitled to the FLSA's protections. See 29 U.S.C. § 203(e).

15. At all times relevant hereto, Defendant acted or failed to act through its agents, servants, and/or employees thereto existing, each of whom acted at all times relevant hereto in the course and scope of their employment with and for Defendant.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

16. Paragraphs 1 through 15 are hereby incorporated by reference as though the same were fully set forth at length herein.

17. This action is brought as a collective action to recover unpaid overtime compensation, liquidated damages, statutory penalties, and damages owed to Plaintiff and all similarly situated current and former employees of Defendant.

18. Pursuant to 29 U.S.C. § 216(b) of the FLSA, Plaintiff brings this collective action individually and on behalf of all other similarly situated hourly workers presently or formerly

employed by Defendant in its milk processing, bottling, and packaging operations who worked for Defendant at any point in the past three (3) years ("Class Plaintiffs").

19. Plaintiff estimates that there are in excess of twenty (20) other similarly situated employees who either are working or worked for Defendant and were unlawfully denied overtime compensation at 1.5 times their "regular rate" of pay for hours worked in excess of forty (40) in a workweek as a result of the unlawful practices described herein. The precise number of employees can easily be ascertained by Defendant. These employees can be identified and located using Defendant's payroll and/or personnel records. Class Plaintiffs may be informed of the pendency of this Collective Action by direct mail and/or publication.

20. Pursuant to 29 U.S.C. § 216(b), this action is properly maintained as a collective action because the Class Plaintiffs are similarly-situated. Plaintiff and Class Plaintiffs were similarly denied overtime compensation at their regular rate of pay as a result of Defendant's failure to pay an overtime premium beyond their straight time hourly rate, had the same or similar job classifications and job duties, and were subject to the same uniform policies, business practices, payroll practices, and operating procedures. Further, Defendant's willful policies and practices, which are discussed more fully in this Collective Action Complaint, whereby Defendant has failed to pay Class Plaintiffs an overtime premium based on 1.5 times their "regular rate" for all hours worked over forty (40) hours in a workweek, have impacted Class Plaintiffs in the same fashion.

21. Plaintiff will request the Court to authorize notice to all current and former similarly-situated employees employed by Defendant, informing them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b), for the purpose of seeking unpaid compensation, overtime compensation, and liquidated damages under the FLSA.

## FACTUAL BACKGROUND

22. Paragraphs 1 through 21 are hereby incorporated by reference as though the same were fully set forth at length herein.

23. Plaintiff began his employment with Defendant as a Milk Processor on April 28, 2025.

### Facts Related to Plaintiff's Individual and Collective Claims for Unpaid Overtime Compensation

24. Paragraphs 1 through 23 are hereby incorporated by reference as though the same were fully set forth at length herein.

25. Defendant is a dairy farm which primarily produces yogurt.

26. According to Defendant's website, Defendant's yogurt "is sold via natural foods distributors throughout the eastern United States," and is "available throughout most of the Eastern United States, as well as some parts of the Mid-West." See https://sevenstarsfarm.com/our-mission/ (last visited April 24, 2026).

27. Although Defendant maintains milk-producing dairy cattle which provide some of the milk used to produce its yogurt, Defendant also uses a significant quantity of milk produced by third-party farms to produce its products.

28. Indeed, on the FAQ section of Defendant's website, Defendant responds to the question, "Does all the milk used for your yogurt come from your farm?" by saying, "No it does not. We produce approximately half of the milk used in the yogurt on our farm. Another quarter is produced by Camp Hill Village, Kimberton Hills (www.camphillkimberton.org) and the remainder comes from several Amish farms." See https://sevenstarsfarm.com/faqs/ (last visited April 24, 2026).

29. Defendant advertises that its "yogurt is made with the help of certified organic milk from our organic partner farms." See https://sevenstarsfarm.com/biodynamic/ (last visited April 24, 2026).

30. This outside milk from other farms arrives approximately 3-4 times per week, is cooled, and then blended into the milk produced by Defendant's own dairy cows.

31. Plaintiff and Class Plaintiffs begin processing this milk by pumping it either directly from the milk trucks or one of the two bulk storage tanks (with the blended milk), into one or both of the vats in the processing room.

32. The blended milk is agitated and pasteurized and then cooled down to the appropriate temperature to introduce yogurt culture, which the processor adds along with mold inhibitor.

33. Plaintiff and, upon information and belief, Class Plaintiffs perform work on non-processing days incidental to the processing of milk from other farms including, but not limited to cleaning the milk truck, operating the cupping machine, boxing and palletizing yogurt for pickup by customers (including distributors), and cleaning up the processing room.

34. Because they thus process and work with raw milk from other producers, in addition to raw milk from Defendant's own herd, Plaintiff and Class Plaintiffs do not qualify as agricultural employees exempt from the FLSA's overtime provisions under 29 U.S.C. § 213(b)(12); see also 29 C.F.R. § 780.111.

35. Because they are paid on an hourly basis, Plaintiff and Class Plaintiffs do not qualify for any of the exemptions from overtime compensation under the FLSA which require payment on a salary and/or fee basis, such as the exemptions for executive, administrative, and/or professional employees.

36. Accordingly, Plaintiff and Class Plaintiffs are "non-exempt" within the meaning of the FLSA, and thus were entitled to receive overtime compensation at 1.5 times their regular rate of pay for all hours worked over forty (40) in a workweek.

37. Nevertheless, Plaintiff and Class Plaintiffs receive only their regular hourly rate for all hours worked, with no overtime premium for overtime hours.

38. By way of example, during the pay period of July 27, 2025 to August 9, 2025, Plaintiff worked 93.50 hours, for at least 13.50 hours of overtime, but received only his regular hourly rate of $26.00 for all hours worked.

39. Upon information and belief, Class Plaintiffs often worked significantly in excess of forty (40) hours per week, but did not receive overtime compensation for their overtime hours worked.

40. Plaintiff and, upon information and belief, Class Plaintiffs were misclassified by Defendant as exempt agricultural employees and were, in actuality, non-exempt employees of Defendant within the meaning of the FLSA.

41. In or around February 2026, at least one of Plaintiff's coworkers questioned Defendant's management about its failure to pay overtime compensation, putting Defendant on notice of the possibility of Class Plaintiffs' misclassification as overtime-exempt.

42. Despite this warning, Defendant has continued to deny Plaintiff and Class Plaintiffs overtime compensation in violation of the FLSA to date.

43. As a result of Defendant's aforesaid willful and illegal actions, Plaintiff and Class Plaintiffs have suffered damages.

**Facts Related to Plaintiff's Claims for Retaliation**

44. Paragraphs 1 through 43 are hereby incorporated by reference as though the same were fully set forth at length herein.

45. On April 24, 2026, Plaintiff initiated this action by the Initial Complaint against Defendant under the FLSA.

46. On May 6, 2026, Defendant, by and through its counsel, returned a completed Waiver of the Service of Summons Form with respect to the Initial Complaint.

47. Since Plaintiff filed the Initial Complaint, Defendant has reduced his work hours (and therefore his earnings) and the number of days he performs milk processing, while assigning him more menial (and less desirable) job duties, isolating him from his coworkers, and subjecting him to differential disciplinary action.

48. Approximately one (1) week after Plaintiff filed the Initial Complaint, Defendant began training one of Plaintiff's coworkers, Melissa, on vat cleaning and milk processing (Plaintiff's chief tasks), while reducing Plaintiff's hours well below 40 hours per week.

49. Indeed, on June 8, 2026, Melissa informed Plaintiff that Defendant had upgraded her from part-time to full-time status in May, shortly after the Initial Complaint was filed.

50. That same day, Plaintiff filed an Opt-In and Consent to Join Form on behalf of Opt-In Plaintiff Grant McGeary ("Mr. McGeary") via ECF, which automatically sent notification of said filing to Defendant's counsel. See ECF No. 10.

51. The very next day, i.e. June 9, 2026, Defendant's Owner, Cindy Dunphy ("Ms. Dunphy"), issued Plaintiff a "Corrective Action Report," i.e. write-up, for "hav[ing] his phone in the boxing cooler while working" the previous day and directed him to keep his phone in "[his] plastic box during work."

52. When Plaintiff discussed the writeup with Ms. Dunphy, she accused him of holding his phone and slowing down production as a result, claiming that "Melissa and Rick were complaining about it."

53. Nevertheless, Melissa subsequently confirmed to Plaintiff that she had not complained about him and confirmed that he had not been slowing down production, suggesting the pretextual nature of the writeup.

54. Although Plaintiff objected to Ms. Dunphy that it is very common for employees to have their phones on them or nearby (including in the boxing cooler), rather than stowed in their plastic storage containers, she insisted on upholding the writeup.

55. To this day, Plaintiff is required to stow his cell phone in his plastic item box, whereas Defendant does not enforce this rule against his coworkers, who leave their phones out in Ms. Dunphy's plain sight without any repercussions.

56. On Wednesday, August 19, 2026, Ms. Dunphy told Plaintiff to leave work before his work (cleaning the vats) had been completed because she did not want him to go over 40 hours, while suggesting this work could be completed by Melissa, who, upon information and belief, was receiving more work hours than Plaintiff.

57. Ms. Dunphy reversed course only when Opt-In Plaintiff, Grant McGeary ("Mr. McGeary") pointed out that Plaintiff had only worked 14 hours so far that week and would be nowhere near the 40-hour overtime threshold.

58. Upon information and belief, although Defendant imposed a 40-hour cap on employee hours following the filing of this lawsuit, Plaintiff consistently receives fewer hours than his coworkers, including, but not limited to new hires who routinely match or exceed his work hours.

59. Plaintiff's hours have been reduced well below 40 since the Initial Complaint was filed.

60. In this regard, Plaintiff averaged approximately 74 hours per pay period prior to filing this lawsuit, but only approximately 60 hours per pay period thereafter.

61. The same trend holds even if overtime hours are excluded, with Plaintiff averaging approximately 70 regular (i.e. non-overtime) hours per pay period prior to filing this lawsuit, and only 60 per pay period thereafter.

62. Upon information and belief, Ms. Dunphy wrote Plaintiff up, reduced his hours, assigned him more menial tasks (such as cleaning and moving boxes), and subjected his work performance to disproportionate scrutiny and criticism, to discourage Plaintiff's coworkers from joining or assisting with this lawsuit.

63. Indeed, in mid to late May 2026, one of Plaintiff's coworkers, Steph, commented on Ms. Dunphy's disproportionate invigilation and criticism of Plaintiff's performance, telling Mr. McGeary, "She [i.e. Ms. Dunphy] doesn't check anybody's work in here. [But] everything John does, she's right behind him, checking everything."

64. Plaintiff engaged in protected activity under the FLSA by filing the Initial Complaint, filing Mr. McGeary's Opt-In and Consent to Join Form, and discussing the lawsuit with coworkers, including Mr. McGeary.

65. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, lost earnings and earnings potential, other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to his reputation.

**COUNT I**
**FAIR LABOR STANDARDS ACT**
**29 U.S.C. § 201, *et seq.***
**FAILURE TO PAY OVERTIME COMPENSATION**

66. Paragraphs 1 through 65 are hereby incorporated by reference as though the same were fully set forth at length herein.

67. Pursuant to Section 207(a)(1) of the FLSA, non-exempt employees must be paid overtime equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of forty (40) hours per week.

68. Defendant misclassified Plaintiff and Class Plaintiffs as exempt agricultural workers within the meaning of the FLSA, thus failing to pay them overtime compensation for all hours worked over forty (40) in a workweek.

69. The foregoing actions of Defendant and the policies and practices of Defendant violate the FLSA.

70. Defendant's actions were willful, not in good faith, and in reckless disregard of clearly applicable FLSA provisions.

71. Defendant is liable to Plaintiff and Class Plaintiffs for actual damages, liquidated damages, and other equitable relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs, and expenses.

**WHEREFORE,** Plaintiff prays for the following relief on behalf of himself and Class Plaintiffs;

A. An Order from this Court permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

B. An Order from the Court ordering Defendant to file with this Court and furnish to the undersigned counsel a list of all names and addresses of all persons presently or formerly

employed by Defendant at any point during the past three (3) years as hourly workers in its milk processing, bottling, and/or packaging operations, and authorizing Plaintiff's counsel to issue a notice at the earliest possible time to these individuals, informing them that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit if they worked for Defendant during the liability period, but were not paid overtime compensation at 1.5 times their regular rate of pay as required by the FLSA;

C. Adjudicating and declaring that Defendant's conduct as set forth herein and above is in violation of the FLSA;

D. Adjudicating and declaring that Defendant violated the FLSA by failing to pay overtime compensation to Plaintiff and Class Plaintiffs for work performed in excess of forty (40) hours per week;

E. Awarding Plaintiff and Class Plaintiffs back overtime compensation in an amount consistent with the FLSA;

F. Awarding Plaintiff and Class Plaintiffs liquidated damages in accordance with the FLSA;

G. Awarding Plaintiff reasonable attorneys' fees and all costs of this action, to be paid by Defendant, in accordance with the FLSA;

H. Awarding pre- and post-judgment interest and court costs as further allowed by law;

I. Granting Plaintiff and the Class Plaintiffs leave to add additional plaintiffs by motion, the filing of written opt-in consent forms, or any other method approved by the Court; and

J. For all additional general and equitable relief to which Plaintiff and the Class Plaintiffs may be entitled.

**COUNT II**
**FAIR LABOR STANDARDS ACT**
**29 U.S.C. § 215, *et seq.***
**RETALIATION**

72. Paragraphs 1 through 71 are hereby incorporated by reference as though the same were fully set forth at length herein.

73. Plaintiff engaged in protected activity under the FLSA by filing the Initial Complaint, filing Mr. McGeary's Opt-In and Consent to Join Form, and discussing the lawsuit with coworkers, including Mr. McGeary.

74. Shortly thereafter, Defendant began retaliating against Plaintiff in the manner described above, reducing his work hours (and therefore his pay), subjecting him to differential discipline and increased scrutiny, and demonstrating a pattern of continued antagonism likely to discourage Plaintiff's coworkers from joining or assisting with this lawsuit.

75. By reason of the foregoing, Defendant, through its agents, officers, servants, and/or employees has violated the FLSA by retaliating against Plaintiff in retaliation for engaging in protected activity under the FLSA.

76. As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment opportunities, promotion benefits, earnings, earnings potential, raises, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A. Lost wages in an amount to be determined at trial;

B. Liquidated damages in an amount equal to Plaintiff's lost wages;

C. Compensatory damages for emotional distress and humiliation in an amount to be determined at trial;

D. Punitive damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, willful, wanton, and/or malicious conduct;

E. Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

F. Pre-judgment interest in an appropriate amount;

G. Such other and further relief as is just and equitable under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By: /s/ Michael Groh

Michael Murphy, Esq.
Michael Groh, Esq.
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
murphy@phillyemploymentlawyer.com
mgroh@phillyemploymentlawyer.com
Attorneys for Plaintiff

Dated: September 9, 2026

**DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's and the Class Plaintiffs' employment, to their potential claims and their claims to damages, to any defenses to same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spread sheets, images, cache memory, payroll records, paystubs, time records, time sheets and any other information and/or data which may be relevant to any claim or defense in this litigation.

# EXHIBIT "B"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JOHN HARRIS, *individually and on behalf of all others similarly situated* :
437 Church St :
Royersford, PA 19468 :
: CIVIL ACTION NO.: 26-02707-MRP
:
Plaintiff, : JURY TRIAL DEMANDED:
:
v. :
:
SEVEN STARS FARM, INC. :
501 W. Seven Stars Road :
Phoenixville, PA 19460 :
:
:
Defendant. :

## FIRST AMENDED COLLECTIVE ACTION COMPLAINT

Plaintiff John Harris ("Plaintiff") hereby brings this action against Defendant Seven Stars Farm, Inc. ("Defendant"), and alleges, upon personal belief as to his own acts, and upon information and belief as to the acts of others, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this complaint contending that Defendant unlawfully failed to pay him and other similarly-situated hourly workers employed in Defendant's milk processing, bottling, and packaging operations ("Class Plaintiffs") overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

2. Plaintiff is an employee of Defendant who was employed in the position of Milk Processor. Plaintiff and Class Plaintiffs regularly work more than forty (40) hours per week, but

receive only their regular hourly rate (i.e. straight-time compensation) for their overtime hours worked.

3. Accordingly, Plaintiff contends that he and Class Plaintiffs are owed unpaid overtime compensation which has been denied them as a result of Defendant's unlawful pay practices.

4. Plaintiff brings this action as a representative action under the FLSA for monetary damages and penalties, to seek redress for Defendant's willful, unlawful, and improper conduct.

5. Plaintiff further contends Defendant has violated the FLSA by retaliating against him with respect to the terms and conditions of his employment for engaging in legally-protected activity, including the filing of this lawsuit on April 24, 2026 (the "Initial Complaint").

**JURISDICTION AND VENUE**

~~5.~~6. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which provides, in relevant part, that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction." See 29 U.S.C. § 216(b).

~~6.~~7. This Court also has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

~~7.~~8. General personal jurisdiction over Defendant exists in the Commonwealth of Pennsylvania because it is both incorporated and maintains its principal place of business in Pennsylvania.

~~8.~~9. The venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as the parties reside in this judicial district, doing business therein, and the unlawful practices about which Plaintiff is complaining were committed in the Commonwealth of Pennsylvania and in this judicial district.

## PARTIES

~~9.~~10. Plaintiff John Harris currently resides at 437 Church St, Royersford, PA 19468.

~~10.~~11. Defendant Seven Stars Farm, Inc., is a domestic business corporation organized and existing under the laws of the Commonwealth of Pennsylvania with an office address registered with the Pennsylvania Secretary of State of 419 W Seven Stars Rd., Box 560, Kimberton, PA 19442.

~~11.~~12. Defendant is the employer of Plaintiff and Class Plaintiffs and is covered by the FLSA.

~~12.~~13. Upon information and belief, Defendant is a covered employer under the FLSA in that, during the course of Plaintiff's employment and the past three years, it had an annual dollar volume of sales or business done of at least $500,000, and has multiple employees (including, but not limited to Plaintiff and Class Plaintiffs) who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce.

~~13.~~14. Plaintiff and Class Plaintiffs are employees who were engaged in commerce and employed by Defendant during all times relevant hereto and, as such, were employees entitled to the FLSA's protections. See 29 U.S.C. § 203(e).

~~14.~~15. At all times relevant hereto, Defendant acted or failed to act through its agents, servants, and/or employees thereto existing, each of whom acted at all times relevant hereto in the course and scope of their employment with and for Defendant.

## FLSA COLLECTIVE ACTION ALLEGATIONS

~~15.~~16. Paragraphs 1 through ~~14~~15 are hereby incorporated by reference as though the same were fully set forth at length herein.

~~16.~~17. This action is brought as a collective action to recover unpaid overtime compensation, liquidated damages, statutory penalties, and damages owed to Plaintiff and all similarly situated current and former employees of Defendant.

~~17.~~18. Pursuant to 29 U.S.C. § 216(b) of the FLSA, Plaintiff brings this collective action individually and on behalf of all other similarly situated hourly workers presently or formerly employed by Defendant in its milk processing, bottling, and packaging operations who worked for Defendant at any point in the past three (3) years ("Class Plaintiffs").

~~18.~~19. Plaintiff estimates that there are in excess of twenty (20) other similarly situated employees who either are working or worked for Defendant and were unlawfully denied overtime compensation at 1.5 times their "regular rate" of pay for hours worked in excess of forty (40) in a workweek as a result of the unlawful practices described herein. The precise number of employees can easily be ascertained by Defendant. These employees can be identified and located using Defendant's payroll and/or personnel records. Class Plaintiffs may be informed of the pendency of this Collective Action by direct mail and/or publication.

~~19.~~20. Pursuant to 29 U.S.C. § 216(b), this action is properly maintained as a collective action because the Class Plaintiffs are similarly-situated. Plaintiff and Class Plaintiffs were similarly denied overtime compensation at their regular rate of pay as a result of Defendant's failure to pay an overtime premium beyond their straight time hourly rate, had the same or similar job classifications and job duties, and were subject to the same uniform policies, business practices, payroll practices, and operating procedures. Further, Defendant's willful policies and practices, which are discussed more fully in this Collective Action Complaint, whereby Defendant has failed to pay Class Plaintiffs an overtime premium based on 1.5 times their

"regular rate" for all hours worked over forty (40) hours in a workweek, have impacted Class Plaintiffs in the same fashion.

~~20.~~21. Plaintiff will request the Court to authorize notice to all current and former similarly-situated employees employed by Defendant, informing them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b), for the purpose of seeking unpaid compensation, overtime compensation, and liquidated damages under the FLSA.

## FACTUAL BACKGROUND

~~21.~~22. Paragraphs 1 through ~~20~~21 are hereby incorporated by reference as though the same were fully set forth at length herein.

~~22.~~23. Plaintiff began his employment with Defendant as a Milk Processor on April 28, 2025.

### Facts Related to Plaintiff's Individual and Collective Claims for Unpaid Overtime Compensation

24. Paragraphs 1 through 23 are hereby incorporated by reference as though the same were fully set forth at length herein.

~~23.~~25. Defendant is a dairy farm which primarily produces yogurt.

~~24.~~26. According to Defendant's website, Defendant's yogurt "is sold via natural foods distributors throughout the eastern United States," and is "available throughout most of the Eastern United States, as well as some parts of the Mid-West." See https://sevenstarsfarm.com/our-mission/ (last visited April 24, 2026).

~~25.~~27. Although Defendant maintains milk-producing dairy cattle which provide some of the milk used to produce its yogurt, Defendant also uses a significant quantity of milk produced by third-party farms to produce its products.

~~26.~~28. Indeed, on the FAQ section of Defendant's website, Defendant responds to the question, "Does all the milk used for your yogurt come from your farm?" by saying, "No it does not. We produce approximately half of the milk used in the yogurt on our farm. Another quarter is produced by Camp Hill Village, Kimberton Hills (www.camphillkimberton.org) and the remainder comes from several Amish farms." See https://sevenstarsfarm.com/faqs/ (last visited April 24, 2026).

~~27.~~29. Defendant advertises that its "yogurt is made with the help of certified organic milk from our organic partner farms." See https://sevenstarsfarm.com/biodynamic/ (last visited April 24, 2026).

~~28.~~30. This outside milk from other farms arrives approximately 3-4 times per week, is cooled, and then blended into the milk produced by Defendant's own dairy cows.

~~29.~~31. Plaintiff and Class Plaintiffs begin processing this milk by pumping it either directly from the milk trucks or one of the two bulk storage tanks (with the blended milk), into one or both of the vats in the processing room.

~~30.~~32. The blended milk is agitated and pasteurized and then cooled down to the appropriate temperature to introduce yogurt culture, which the processor adds along with mold inhibitor.

~~31.~~33. Plaintiff and, upon information and belief, Class Plaintiffs perform work on non-processing days incidental to the processing of milk from other farms including, but not limited to cleaning the milk truck, operating the cupping machine, boxing and palletizing yogurt for pickup by customers (including distributors), and cleaning up the processing room.

~~32.~~34. Because they thus process and work with raw milk from other producers, in addition to raw milk from Defendant's own herd, Plaintiff and Class Plaintiffs do not qualify as

agricultural employees exempt from the FLSA's overtime provisions under 29 U.S.C. § 213(b)(12); see also 29 C.F.R. § 780.111.

~~33.~~35. Because they are paid on an hourly basis, Plaintiff and Class Plaintiffs do not qualify for any of the exemptions from overtime compensation under the FLSA which require payment on a salary and/or fee basis, such as the exemptions for executive, administrative, and/or professional employees.

~~34.~~36. Accordingly, Plaintiff and Class Plaintiffs are "non-exempt" within the meaning of the FLSA, and thus were entitled to receive overtime compensation at 1.5 times their regular rate of pay for all hours worked over forty (40) in a workweek.

~~35.~~37. Nevertheless, Plaintiff and Class Plaintiffs receive only their regular hourly rate for all hours worked, with no overtime premium for overtime hours.

~~36.~~38. By way of example, during the pay period of July 27, 2025 to August 9, 2025, Plaintiff worked 93.50 hours, for at least 13.50 hours of overtime, but received only his regular hourly rate of $26.00 for all hours worked.

~~37.~~39. Upon information and belief, Class Plaintiffs often worked significantly in excess of forty (40) hours per week, but did not receive overtime compensation for their overtime hours worked.

~~38.~~40. Plaintiff and, upon information and belief, Class Plaintiffs were misclassified by Defendant as exempt agricultural employees and were, in actuality, non-exempt employees of Defendant within the meaning of the FLSA.

~~39.~~41. In or around February 2026, at least one of Plaintiff's coworkers questioned Defendant's management about its failure to pay overtime compensation, putting Defendant on notice of the possibility of Class Plaintiffs' misclassification as overtime-exempt.

~~40.~~42. Despite this warning, Defendant has continued to deny Plaintiff and Class Plaintiffs overtime compensation in violation of the FLSA to date.

~~41.~~43. As a result of Defendant's aforesaid willful and illegal actions, Plaintiff and Class Plaintiffs have suffered damages.

**Facts Related to Plaintiff's Claims for Retaliation**

44. Paragraphs 1 through 43 are hereby incorporated by reference as though the same were fully set forth at length herein.

45. On April 24, 2026, Plaintiff initiated this action by the Initial Complaint against Defendant under the FLSA.

46. On May 6, 2026, Defendant, by and through its counsel, returned a completed Waiver of the Service of Summons Form with respect to the Initial Complaint.

47. Since Plaintiff filed the Initial Complaint, Defendant has reduced his work hours (and therefore his earnings) and the number of days he performs milk processing, while assigning him more menial (and less desirable) job duties, isolating him from his coworkers, and subjecting him to differential disciplinary action.

48. Approximately one (1) week after Plaintiff filed the Initial Complaint, Defendant began training one of Plaintiff's coworkers, Melissa, on vat cleaning and milk processing (Plaintiff's chief tasks), while reducing Plaintiff's hours well below 40 hours per week.

49. Indeed, on June 8, 2026, Melissa informed Plaintiff that Defendant had upgraded her from part-time to full-time status in May, shortly after the Initial Complaint was filed.

50. That same day, Plaintiff filed an Opt-In and Consent to Join Form on behalf of Opt-In Plaintiff Grant McGeary ("Mr. McGeary") via ECF, which automatically sent notification of said filing to Defendant's counsel. See ECF No. 10.

51. The very next day, i.e. June 9, 2026, Defendant's Owner, Cindy Dunphy ("Ms. Dunphy"), issued Plaintiff a "Corrective Action Report," i.e. write-up, for "hav[ing] his phone in the boxing cooler while working" the previous day and directed him to keep his phone in "[his] plastic box during work."

52. When Plaintiff discussed the writeup with Ms. Dunphy, she accused him of holding his phone and slowing down production as a result, claiming that "Melissa and Rick were complaining about it."

53. Nevertheless, Melissa subsequently confirmed to Plaintiff that she had not complained about him and confirmed that he had not been slowing down production, suggesting the pretextual nature of the writeup.

54. Although Plaintiff objected to Ms. Dunphy that it is very common for employees to have their phones on them or nearby (including in the boxing cooler), rather than stowed in their plastic storage containers, she insisted on upholding the writeup.

55. To this day, Plaintiff is required to stow his cell phone in his plastic item box, whereas Defendant does not enforce this rule against his coworkers, who leave their phones out in Ms. Dunphy's plain sight without any repercussions.

56. On Wednesday, August 19, 2026, Ms. Dunphy told Plaintiff to leave work before his work (cleaning the vats) had been completed because she did not want him to go over 40 hours, while suggesting this work could be completed by Melissa, who, upon information and belief, was receiving more work hours than Plaintiff.

57. Ms. Dunphy reversed course only when Opt-In Plaintiff, Grant McGeary ("Mr. McGeary") pointed out that Plaintiff had only worked 14 hours so far that week and would be nowhere near the 40-hour overtime threshold.

58. Upon information and belief, although Defendant imposed a 40-hour cap on employee hours following the filing of this lawsuit, Plaintiff consistently receives fewer hours than his coworkers, including, but not limited to new hires who routinely match or exceed his work hours.

59. Plaintiff's hours have been reduced well below 40 since the Initial Complaint was filed.

60. In this regard, Plaintiff averaged approximately 74 hours per pay period prior to filing this lawsuit, but only approximately 60 hours per pay period thereafter.

61. The same trend holds even if overtime hours are excluded, with Plaintiff averaging approximately 70 regular (i.e. non-overtime) hours per pay period prior to filing this lawsuit, and only 60 per pay period thereafter.

62. Upon information and belief, Ms. Dunphy wrote Plaintiff up, reduced his hours, assigned him more menial tasks (such as cleaning and moving boxes), and subjected his work performance to disproportionate scrutiny and criticism, to discourage Plaintiff's coworkers from joining or assisting with this lawsuit.

63. Indeed, in mid to late May 2026, one of Plaintiff's coworkers, Steph, commented on Ms. Dunphy's disproportionate invigilation and criticism of Plaintiff's performance, telling Mr. McGeary, "She [i.e. Ms. Dunphy] doesn't check anybody's work in here. [But] everything John does, she's right behind him, checking everything."

64. Plaintiff engaged in protected activity under the FLSA by filing the Initial Complaint, filing Mr. McGeary's Opt-In and Consent to Join Form, and discussing the lawsuit with coworkers, including Mr. McGeary.

65. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, lost earnings and earnings potential, other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to his reputation.

**COUNT I**
**FAIR LABOR STANDARDS ACT**
**29 U.S.C. § 201, *et seq.***
**FAILURE TO PAY OVERTIME COMPENSATION**

~~42.~~66. Paragraphs 1 through ~~41~~65 are hereby incorporated by reference as though the same were fully set forth at length herein.

~~43.~~67. Pursuant to Section 207(a)(1) of the FLSA, non-exempt employees must be paid overtime equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of forty (40) hours per week.

~~44.~~68. Defendant misclassified Plaintiff and Class Plaintiffs as exempt agricultural workers within the meaning of the FLSA, thus failing to pay them overtime compensation for all hours worked over forty (40) in a workweek.

~~45.~~69. The foregoing actions of Defendant and the policies and practices of Defendant violate the FLSA.

~~46.~~70. Defendant's actions were willful, not in good faith, and in reckless disregard of clearly applicable FLSA provisions.

~~47.~~71. Defendant is liable to Plaintiff and Class Plaintiffs for actual damages, liquidated damages, and other equitable relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs, and expenses.

**WHEREFORE,** Plaintiff prays for the following relief on behalf of himself and Class Plaintiffs;

A. An Order from this Court permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

B. An Order from the Court ordering Defendant to file with this Court and furnish to the undersigned counsel a list of all names and addresses of all persons presently or formerly employed by Defendant at any point during the past three (3) years as hourly workers in its milk processing, bottling, and/or packaging operations, and authorizing Plaintiff's counsel to issue a notice at the earliest possible time to these individuals, informing them that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit if they worked for Defendant during the liability period, but were not paid overtime compensation at 1.5 times their regular rate of pay as required by the FLSA;

C. Adjudicating and declaring that Defendant's conduct as set forth herein and above is in violation of the FLSA;

D. Adjudicating and declaring that Defendant violated the FLSA by failing to pay overtime compensation to Plaintiff and Class Plaintiffs for work performed in excess of forty (40) hours per week;

E. Awarding Plaintiff and Class Plaintiffs back overtime compensation in an amount consistent with the FLSA;

F. Awarding Plaintiff and Class Plaintiffs liquidated damages in accordance with the FLSA;

G. Awarding Plaintiff reasonable attorneys' fees and all costs of this action, to be paid by Defendant, in accordance with the FLSA;

H. Awarding pre- and post-judgment interest and court costs as further allowed by law;

I. Granting Plaintiff and the Class Plaintiffs leave to add additional plaintiffs by motion, the filing of written opt-in consent forms, or any other method approved by the Court; and

J. For all additional general and equitable relief to which Plaintiff and the Class Plaintiffs may be entitled.

**COUNT II**
**FAIR LABOR STANDARDS ACT**
**29 U.S.C. § 215, *et seq.***
**RETALIATION**

72. Paragraphs 1 through 71 are hereby incorporated by reference as though the same were fully set forth at length herein.

73. Plaintiff engaged in protected activity under the FLSA by filing the Initial Complaint, filing Mr. McGeary's Opt-In and Consent to Join Form, and discussing the lawsuit with coworkers, including Mr. McGeary.

74. Shortly thereafter, Defendant began retaliating against Plaintiff in the manner described above, reducing his work hours (and therefore his pay), subjecting him to differential discipline and increased scrutiny, and demonstrating a pattern of continued antagonism likely to discourage Plaintiff's coworkers from joining or assisting with this lawsuit.

75. By reason of the foregoing, Defendant, through its agents, officers, servants, and/or employees has violated the FLSA by retaliating against Plaintiff in retaliation for engaging in protected activity under the FLSA.

76. As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment opportunities, promotion benefits, earnings, earnings potential, raises, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A. Lost wages in an amount to be determined at trial;

B. Liquidated damages in an amount equal to Plaintiff's lost wages;

C. Compensatory damages for emotional distress and humiliation in an amount to be determined at trial;

D. Punitive damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, willful, wanton, and/or malicious conduct;

E. Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

F. Pre-judgment interest in an appropriate amount;

G. Such other and further relief as is just and equitable under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By: /s/ Michael Groh

Michael Murphy, ~~Esquire~~Esq.
Michael Groh, ~~Esquire~~Esq.
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-~~021~~0210
murphy@phillyemploymentlawyer.com
mgroh@phillyemploymentlawyer.com
Attorneys for Plaintiff

Dated: September 9, 2026

**DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's and the Class Plaintiffs' employment, to their potential claims and their claims to damages, to any defenses to same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spread sheets, images, cache memory, payroll records, paystubs, time records, time sheets and any other information and/or data which may be relevant to any claim or defense in this litigation.