**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN HARRIS, *et al.* | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 26-cv-02707-MRP |
| v. | : | |
| | : | |
| SEVEN STARS FARM, INC. | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT SEVEN STARS FARM, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

## I. INTRODUCTION

On April 24, 2026, Plaintiff John Harris filed a Complaint against his current employer, Defendant Seven Stars Farm, Inc., under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Mr. Harris' Complaint is styled as both an individual and collective action, asserting a single Count against Seven Stars for alleged "failure to pay overtime compensation" under 29 U.S.C. § 207(a)(1). (*See* ECF No. 1).[1] Now, Mr. Harris seeks leave to amend his Complaint to add a retaliation claim under 29 U.S.C. § 215(a)(3), alleging Seven Stars: "reduced his work hours," gave him "more menial tasks," and subjected him to "differential discipline and increased scrutiny" because he filed suit. (ECF No. 16-2, ¶¶ 62; 74).

Mr. Harris' proposed retaliation claim is futile because he cannot identify any adverse employment action causally linked to his Complaint. Mr. Harris' work hours after filing his Complaint track his pre-Complaint hours. The remainder of Mr. Harris' claim rests on hours and assignments given to other employees, which do not affect Mr. Harris' own title, rate, or

[1] Mr. Harris alleges "Defendant misclassified Plaintiff and Class Plaintiffs as exempt agricultural workers within the meaning of the FLSA, thus failing to pay them overtime compensation for all hours worked over forty (40) in a workweek." (ECF No. 16-2, ¶ 68).

classification. Mr. Harris also complains of a single warning about improper cell phone use, which did not alter his compensation, position, or opportunities in any manner.

Moreover, any purported retaliation began, by Mr. Harris' own account, within a week after he filed his Complaint on April 24, 2026, (*see id*, ¶ 51), and spanned to "mid to late May," (*id.* at ¶ 63), yet, Mr. Harris waited several months thereafter before seeking leave to amend. Mr. Harris offers no legitimate explanation for his delay, which has prejudiced Seven Stars by introducing an individual claim seeking categories of damages his original Complaint never sought.

## II. PROCEDURAL HISTORY

Mr. Harris filed his Complaint on April 24, 2026, asserting a single count under the FLSA for unpaid overtime on behalf of himself and a proposed collective of hourly workers in Seven Stars' milk processing, bottling, and packaging operations. (ECF No. 1). Seven Stars filed an Answer with Affirmative Defenses on May 26, 2026, denying liability and asserting, among other defenses, that Plaintiff and the putative collective are exempt agricultural employees under 29 U.S.C. § 213(b)(12),[2] and that Mr. Harris is not similarly situated to those he seeks to represent on a collective basis. (*See* ECF No. 9). On June 8, 2026, Mr. Harris filed an opt-in consent form on behalf of Grant McGeary. (ECF No. 10). The Court issued a notice on July 8, 2026 scheduling a Rule 16 conference, (ECF No. 12), and the parties conferred under Rule 26(f) on August 21, 2026. On September 2, 2026, at the Rule 16 conference, Mr. Harris' counsel announced for the first time

---

[2] Section 213(b)(12) provides that the FLSA's maximum hour requirements do not apply to "any employee employed in agriculture or in connection with the operation or maintenance of ditches, canals, reservoirs, or waterways, not owned or operated for profit, or operated on a sharecrop basis, and which are used exclusively for supply and storing of water, at least 90 percent of which was ultimately delivered for agricultural purposes during the preceding calendar year . . . ." *See also* 29 U.S.C. § 203(f); 29 C.F.R. § 780.105; 29 C.F.R. § 780.111 (defining various forms of agriculture under the FLSA).

an intention to amend the Complaint to add a retaliation claim. The Court adjourned the conference pending resolution of Mr. Harris' anticipated motion, and did not issue a Rule 16 scheduling order. (ECF No. 15). Plaintiff served written discovery on September 4, 2026, and filed this Motion on September 9, 2026. (ECF No. 16).

## III. ARGUMENT

### A. Legal Standard

Under Fed. R. Civ. P. 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether to grant a motion for leave to amend, a "court considers five factors: bad faith, undue delay, prejudice to the opposing party, the futility of amendment, and whether plaintiff has previously amended his complaint." *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 164 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997)). Here, Mr. Harris' Amended Complaint fails independently under the "futility," "undue delay," and "prejudice" factors.

### B. Futility

"'In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6).'" *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*, 908 F.3d 872, 878 (3d Cir. 2018) (quoting *Burlington Coat Factory*, 114 F.3d at 1434). In determining whether a proposed amended complaint states a claim under Rule 12(b)(6), the Court must "accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff," while "disregard[ing] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Id.* (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). Under the 12(b)(6) standard, a district court generally may not consider matters outside



#2491616v2

the pleadings; however, "a 'document *integral to or explicitly relied* upon in the complaint' may be considered" without converting the motion into a motion for summary judgment.[3] *Burlington Coat Factory*, 114 F.3d at 1426 (emphasis and alternations in original) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996), then citing *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n. 9 (3rd Cir. 1993)); *see, e.g.*, *Bauchman ex rel. Bauchman v. West High Sch.*, 132 F.3d 542, 561–62 (10th Cir. 1997) (holding district court did not err by considering "affidavits, deposition transcripts and exhibits presented by both parties" in evaluating contested motion for leave to amend).

The FLSA "forbids an employer from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA. *Hayes v. Saltz, Mongeluzzi & Bendesky, P.C.*, 652 F.Supp.3d 537, 541 (E.D. Pa. 2023) (quoting 29 U.S.C. § 215(a)(3)). "To state a prima facie case of retaliatory discrimination under the FLSA, a plaintiff must plead that (1) the plaintiff engaged in protected activity, (2) the employer took an adverse employment action against him, and (3) there was a causal link between the plaintiff's protected action and employer's adverse action." *Jones v. Amerihealth Caritas*, 95 F. Supp. 3d 807, 814 (E.D. Pa. 2015).

Here, Mr. Harris alleges protected activity (commencing this litigation), but fails to plead adverse action, or a causal link between his actions and Seven Stars' alleged actions.

[3] Under Fed. R. Civ. P. 12(d), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Relatedly, an amendment may be futile if the amended pleading could not survive a motion for summary judgment. *See Sabatini v. Reinstein*, CIV. A. 99-2393, 2001 WL 872760, at *3 (E.D. Pa. July 10, 2001) (quoting *Wilson v. American Trans Air* 874 F.2d 386, 392 (7th Cir. 1989)); *see also Bauchman*, 132 F.3d at 562 (citing *Wilson*, 874 F.2d at 392; then citing *AM Int'l, Inc. v. Graphic Management Assocs., Inc.*, 44 F.3d 572, 578 (7th Cir. 1995)).

**1. <u>Mr. Harris' hours after filing track his hours before filing, and are not an adverse employment action.</u>**

Mr. Harris claims Seven Stars unlawfully reduced his hours after he filed his Complaint. He alleges he averaged approximately 74 hours per pay period before filing and 60 hours afterward, or approximately 70 and 60 hours if overtime is excluded.[4] (ECF No. 16-2 at ¶¶ 47, 59–61). Citing *Ngafua v. Carepine Home Health, LLC*, No. 23-1468, 2025 U.S. Dist. LEXIS 55735, at *7-9 (E.D. Pa. Mar. 26, 2025), Mr. Harris claims "a reduction in hours may qualify as an adverse employment action," and an "employer's reduction of plaintiff's work hours, even to 40 hours per week, in response to complaint of unpaid overtime qualified as adverse employment action." (ECF No. 16-1 at 7–8). In *Ngafua*, the court identified an **83% reduction** in hours in the two pay periods immediately following the employee's questions about her schedule and overtime pay. But, here, Mr. Harris' timesheets, attached as **Exhibit A**,[5] show his average weekly hours totaled approximately 32.7 per week in the twenty weeks immediately before the April 25, 2026 pay period and approximately 30.1 in the twenty weeks including and since that pay period. This difference of 2.6 hours per week, or about 8%, is ten times less than the reduction relied upon in *Ngafua*, and does not establish a similar inference of retaliation.

---

[4] Confusingly, Mr. Harris alleges he worked 74, 70, and/or 60 hours per two-week pay period, but those totals do not establish that he worked more than 40 hours in any workweek.

[5] Under *Burlington Coat Factory*, Mr. Harris "cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." 114 F.3d at 1426. Here, by claiming to have worked certain hours, Mr. Harris makes his recorded hours central to the proposed retaliation claim. He alleges specific averages before and after filing suit, based on pay periods, and claims the resulting loss of hours reduced his earnings. (ECF No. 16-2 at ¶¶ 47, 59–61, 74). The timesheets are the underlying records of those hours, and, accordingly, should be considered in the futility analysis. *See Bauchman*, 132 F.3d at 561–62; *Sabatini*, 2001 WL 872760, at *3.

Moreover, Mr. Harris' proposed retaliation claim in Count II is inconsistent with his "failure to pay overtime compensation" claim in Count I. Mr. Harris alleges Seven Stars violated the FLSA by permitting him to work beyond forty hours per week without paying overtime, while simultaneously alleging Seven Stars retaliated against him by keeping his weekly hours at or below forty. (ECF No. 16-2, ¶¶ 58–59). Bringing Mr. Harris' hours within the forty-hour threshold could not deprive him of any right under the FLSA, and therefore could not alter his compensation, terms, conditions, or privileges of employment. That conclusion is consistent with the purpose of the FLSA's retaliation protections: "to prevent a fear of retaliation from chilling employees' assertion of FLSA rights." *Uronis v. Cabot Oil & Gas Corp.*, 49 F.4th 263, 270 (3d Cir. 2022). An employer does not chill the assertion of an employee's FLSA rights by changing a practice the employee has challenged. Under Mr. Harris' theory, because any adjustment to scheduling could be recast as retaliation, the Complaint would have estopped Seven Stars from ensuring that neither he, *nor any of its employees*, worked in excess of 40 hours in a workweek until a determination is made on the applicability of the FLSA's agricultural exemption. Not surprisingly, Mr. Harris cites no case authority to support the proposition that Seven Stars must leave the challenged practice untouched for the duration of this litigation, thereby increasing the award of damages if liability is determined.

Mr. Harris' hours fail to supply the adverse employment action required for his proposed retaliation claim. The *de minimus* hours Mr. Harris identifies as lost overlap with hours he asks this Court to declare unlawful. Neither the size of the change nor its character alters his compensation, terms, conditions, or privileges of Mr. Harris' employment. Because Mr. Harris cannot plead an adverse employment action arising from his work hours or any alleged change thereof, his proposed retaliation claim is futile on this ground.

**2. Hours and duties given to other employees do not create any adverse action as to Mr. Harris.**

Several of Mr. Harris' allegations rest not on any change to his own employment, but on benefits allegedly conferred upon other employees: namely, that Seven Stars "began training one of [Mr. Harris'] coworkers, Melissa, on vat cleaning and milk processing," that Melissa "was receiving more work hours than [Mr. Harris]," and that Mr. Harris "consistently receives fewer hours than his coworkers, including, but not limited to new hires who routinely match or exceed his work hours." (ECF No. 16-2, ¶¶ 48, 56, 58). The balance of this theory is his assertion that Seven Stars reduced "the number of days he performs milk processing" and "assigned him more menial tasks (such as cleaning and moving boxes)." (ECF No. 16-2, ¶¶ 47, 62).

However, the terms and conditions of other employees' employment do not change the terms and conditions of *Mr. Harris'* employment. Specifically, Melissa's training on vat cleaning and her change from part-time to full-time were changes to *Melissa's* employment. (ECF No. 16-2, ¶¶ 48–49). Seven Stars' alleged decision to expand Melissa's responsibilities or hours does not alter Mr. Harris' compensation, terms, conditions, or privileges of employment, and therefore does not result in an adverse employment action. Under Mr. Harris' theory, every scheduling decision favoring one worker over another would supply the adverse action element of a retaliation claim.

Moreover, Mr. Harris' dissatisfaction with his work assignments or purported menial assignments do not constitute adverse employment actions, either. *See Rosetsky v. Nat'l Bd. of Med. Examiners of U.S., Inc.*, 350 Fed.Appx. 698, 701 (3d Cir. 2009) (unreported). Mr. Harris claims Seven Stars reduced "the number of days he performs milk processing" and "assigned him more menial tasks (such as cleaning and moving boxes)." (ECF No. 16-2, ¶¶ 47, 62). He does not allege his title changed, that his hourly rate was reduced, or that his classification or standing was affected in any way. Indeed, by his own account, the tasks he now calls menial are and were among

the duties he allegedly performed throughout his employment: Mr. Harris pleads his job duties include "**cleaning** the milk truck, operating the cupping machine, **boxing and palletizing yogurt** for pickup by customers (including distributors), and **cleaning** up the processing room." (ECF No. 16-2, ¶ 33) (emphasis added). Mr. Harris' personal preference for certain job-related tasks over others does not convert the assignment of duties into an adverse employment action.

Because Mr. Harris cannot plead an adverse employment action arising from the hours or duties given to other employees, or from his own assignments, his proposed retaliation claim is futile.

**3. A single warning about cell phone use is not an adverse employment action.**

Mr. Harris' remaining theory concerns a single warning for violating a universal and unrelated workplace rule regarding cell phones. He alleges that on June 9, 2026, the day after he filed Mr. McGeary's opt-in form, Ms. Dunphy issued him a "Corrective Action Report" for "hav[ing] his phone in the boxing cooler while working" the previous day, and directed him to keep his phone in a "plastic box during work." (ECF No. 16-2, ¶ 51). He alleges that Ms. Dunphy attributed the complaint to two coworkers (Melissa and Rick), that Melissa later denied complaining, and that Ms. Dunphy declined to withdraw the warning when he objected that employees commonly keep their phones nearby. (ECF No. 16-2, ¶¶ 52–54). He further alleges that he alone must stow his phone, while his coworkers "leave their phones out in Ms. Dunphy's plain sight without any repercussions." (ECF No. 16-2, ¶ 55). Mr. Harris does not dispute that the rule exists or that he was in the boxing cooler with his phone, nor does he allege his coworkers who reported the issue had any knowledge of Mr. Harris' protected activity under the FLSA.

A warning which has "no adverse impact on . . . employment, [does] not affect . . . compensation, and [does] not impede [an employee's] ability to receive a transfer or

promotion" is not an adverse employment action. *Sconfienza v. Verizon Pennsylvania Inc.*, 307 F. App'x 619, 622 (3d Cir. 2008) (unreported); *see, e.g.*, *Cohen v. BH Media Grp., Inc.*, 419 F.Supp.3d 831, 852 (D.N.J. 2019) (holding a warning was not an "adverse employment action" under FLSA). The warning directed Mr. Harris to store his phone during work. It did not alter his compensation, position, or opportunities. Accordingly, the "Corrective Action Report" does not establish an adverse employment action, and Mr. Harris' retaliation claim is futile on this basis.

**C. Undue Delay and Prejudice**

Even setting aside futility, Mr. Harris' proposed amendment should not be permitted, because it would impose undue delay and prejudice Seven Stars. Denial of leave to amend may rest on "truly undue or unexplained delay," *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993), or "prejudice to the non-moving party," *Cal. Pub. Employees' Ret. Sys.*, 394 F.3d at 171 (quoting *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989)). Prejudice "means undue difficulty in [defending] a lawsuit as result of a change in tactics or theories on the part of the other party." *Deakyne v. Comm'rs of Lewes*, 416 F.2d 290, 300 (3d Cir. 1969); *see also Bechtel*, 886 F.2d 644, 652.

Here, Mr. Harris seeks leave to amend more than four months after the events on which his proposed retaliation claim rests., According to his own proposed Amended Complaint, Mr. Harris alleges that about one week after he filed the Complaint on April 24, 2026, Seven Stars began training Melissa on vat cleaning and milk processing while reducing his hours below forty per week. (ECF No. 16-2, ¶ 48). He alleges that in mid to late May 2026 a coworker remarked on Ms. Dunphy's scrutiny of his work. (ECF No. 16-2, ¶ 63). He learned of Melissa's increased hours on June 8, 2026, and received the Corrective Action Report the next day. (ECF No. 16-2, ¶¶ 49, 51). Despite this, Mr. Harris first raised amendment at the Rule 16 Conference on September 2, 2026,

and filed this Motion on September 9, 2026. (ECF Nos. 15, 16). Mr. Harris offers no explanation for his delay, baldly claiming his proposed retaliation claim is "based on more recent events." (ECF No. 16-1 at 2). But, upon review of the Amended Complaint, the events are not recent. Every fact material to the proposed claim was known to Mr. Harris for three to four months before he sought leave to amend. He does not allege any fact came to light later, and he does not identify anything that prevented him from moving sooner.

The delay is therefore unexplained, and it has prejudiced Seven Stars. Seven Stars filed its Answer on May 26, 2026, to a single count seeking unpaid overtime, liquidated damages, and fees under 29 U.S.C. § 216(b) on behalf of Mr. Harris and a proposed collective. (ECF No. 9). Seven Stars formulated its strategy and defense accordingly. Now, Mr. Harris' proposed retaliation count adds a purely individual dispute over Mr. Harris' own supervision, scheduling, and discipline to the case, and seeks categories of relief his original Complaint never sought, including damages for alleged mental anguish, emotional pain and suffering, emotional distress, humiliation, and reputational harm. (ECF No. 16-2, ¶ 65). Because the proposed retaliation claim is new to this case, individual to Mr. Harris, and seeks damages the original pleading never sought (all on facts known to Mr. Harris for months), leave should be denied on this ground as well.

## IV. CONCLUSION

For all the foregoing reasons, Mr. Harris' proposed retaliation claim fails to plead an adverse employment action, and is therefore futile under Rule 15(a)(2). Mr. Harris also delayed several months in seeking leave, without explanation, to add an individual claim seeking damages his original Complaint never sought. Seven Stars respectfully requests that the Court deny Mr. Harris' Motion for Leave to File a First Amended Complaint.

Respectfully submitted:

UNRUH, TURNER, BURKE & FREES

Dated: September 30, 2026

By: */s/ Jeremy Grivensky*

Brian D. Boreman
Jeremy E. Grivensky
Attorney I.D. Nos. 84074, 332211
bboreman@utbf.com; jgrivensky@utbf.com
17 W. Gay Street
West Chester, PA 19382